Richard HEALEY, Plaintiff,

v.

J.B. SHEET METAL, INC., a Utah corporation, Defendant, Appellee, and Cross–Appellee,

and

Clark Mechanical Contractors, Inc., Defendant, Appellee, and Cross–Appellant.

A.B.P. ENTERPRISES, INC., a Utah corporation, dba ABP Development Company, Third–Party Plaintiff, Appellant, and Cross–Appellee,

v.

Gene PETERSON, dba Gene Peterson Concrete, Third–Party Defendant.

No. 940039–CA.

Court of Appeals of Utah.

March 22, 1995.

Paul S. Felt, Mark M. Bettilyon and George S. Adondakis, Salt Lake City, for appellant.

Glenn C. Hanni and H. Burt Ringwood, Salt Lake City, for cross-appellant.

Robert R. Wallace and John N. Braithwaite, Salt Lake City, for appellee.

Before BENCH, BILLINGS and WILKINS, JJ.

## OPINION

BILLINGS, Judge:

Appellant A.B.P. Enterprises, Inc. (ABP) seeks review of the district court's summary judgment in favor of appellees Clark Mechanical Contractors, Inc. (Clark) and J.B. Sheet Metal, Inc. (JB) on ABP's claim for indemnity against Clark and JB. In addition, cross-appellant Clark seeks review of the district court's summary judgment in favor of cross-appellee JB. We affirm.

## FACTS

Richard Healey and a coworker were preparing to pour concrete on the second level of a building. When they attempted to move a large section of heating duct that was covering an opening in the floor, Healey fell through the opening and was seriously injured.

Healey brought suit against the general contractor, ABP, the mechanical subcontractor, Clark, and the sheet metal sub-subcontractor, JB. ABP cross-claimed for indemnification from Clark and JB, and Clark cross-claimed for judgment over against JB. Healey's claims were subsequently settled and dismissed with prejudice. The district court did not apportion fault among the parties.

This appeal involves the remaining cross-claims. ABP claimed Clark had agreed to indemnify it based on specific indemnity provisions in the contract between itself and Clark (the ABP/Clark Agreement). On cross-motions for summary judgment, the district court granted summary judgment for Clark, dismissing the cross-claim. The district court determined that the ABP/Clark Agreement did not indemnify ABP for ABP's own negligence.

ABP based its cross-claim against JB on certain indemnity provisions in the subcontract between Clark and JB (the Clark/JB Agreement). The district court also dismissed this cross-claim, granting partial summary judgment in favor of JB. Finally, the district court dismissed Clark's cross-claim against JB, which was based on indemnity language in the Clark/JB Agreement, and granted summary judgment in favor of JB.

ABP appeals and Clark cross-appeals. Because we uphold the district court's summary judgment in favor of Clark, we do not reach the merits of Clark's cross-appeal.

## STANDARD OF REVIEW

 Summary judgment, by definition, does not resolve factual issues; summary judgment is proper only when the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). Thus, "a challenge to summary judgment presents for review only questions of law." *Transamerica Cash Reserve v. Dixie Power*, 789 P.2d 24, 25 (Utah 1990). We review those conclusions for correctness, according no particular deference to the trial court. *Id.*

## I. ABP'S CROSS–CLAIM AGAINST CLARK

### A. The Language of Indemnity

ABP argues that the district court erred as a matter of law in determining that the ABP/

Clark Agreement did not indemnify ABP for ABP's own negligence. Both parties rely on *Freund v. Utah Power & Light Co.*, 793 P.2d 362 (Utah 1990).

In *Freund,* the Utah Supreme Court revisited the longstanding rule that "[a] party is contractually obligated to assume ultimate financial responsibility for the negligence of another only when that intention is 'clearly and unequivocally expressed.'" *Id.* at 370 (quoting *Shell Oil Co. v. Brinkerhoff–Signal Drilling Co.*, 658 P.2d 1187, 1189 (Utah 1983)). Noting "a growing trend to relax some of the strictness of the rule of construction when the indemnity arises in a commercial context," the court focused on a case in which a New York appellate court applied a "somewhat liberalized" version of the strict construction rule to an indemnification agreement "'negotiated at arm's length between ... sophisticated business entities.'" *Id.* (quoting *Niagara Frontier Transp. Auth. v. Tri–Delta Constr. Corp.*, 107 A.D.2d 450, 487 N.Y.S.2d 428, 430 (1985)). The court agreed with the New York court's holding that "[i]n such circumstances it is not necessary that the exculpatory language refers expressly to the negligence of the indemnitee, so long as the intention to indemnify can be 'clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances.'" *Id.* (quoting *Niagara Frontier,* 487 N.Y.S.2d at 430 (citation omitted)). The court concluded that "in strictly construing the contractual language, evaluating the indemnification agreement according to the objectives of the parties and the surrounding facts and circumstances is entirely appropriate." *Id.*

■ Thus, *Freund* announced a "liberalized" rule of strict construction: to constitute a clear and unequivocal expression of intent to indemnify for a party's own negligence, an indemnity agreement need not contain specific language to that effect; rather, the language and purpose of the entire agreement, together with the surrounding facts and circumstances, may provide a sufficiently clear and unequivocal expression of the parties' intent. *Id.* We construe the language of indemnity in the ABP/Clark Agreement accordingly.[1]

■ The ABP/Clark Agreement contains the following indemnity provision:

> (a) General Liability: Sub–Contractor shall indemnify and save General Contractor, its officers or agents harmless from and against any and all loss, damage, injury, liability, and claims thereof for injuries to or death of persons, and all loss of or damage to property of others, resulting directly or indirectly from Sub–Contractor's performance of this contract.

ABP argues that the provision's use of the broad language "any and all" in conjunction with "liability" clearly and unequivocally covers liability arising out of ABP's own negligence. Clark counters that the language at the end of the ABP/Clark indemnity provision, "resulting directly or indirectly from [Clark's] performance of this contract," limits the claims for which Clark would be responsible to those arising out of Clark's own negligence.

In *Freund,* the court analyzed a one-paragraph indemnification provision sentence by sentence, concluding that the paragraph "as a whole expresses a clear and unequivocal intent by the parties that the licensee will indemnify the licensor from any and all liabilities, including the liability that arises because of the licensor's negligence." *Id.* at 371. The court emphasized the breadth of the language the parties employed, indemnifying against "'any and all claims, demands, causes of action, costs or other liabilities'" that might arise out of the use of the indemnitor's equipment on or in the vicinity of the indemnitee's utility poles. *Id.* The use of the word "liabilities," the court stated, "is particularly significant since it covers those instances where the licensor is legally liable for damages, including those where liability arises because of the licensor's negligence." *Id.*

1. ABP urges this court to relax further the rule of strict construction of indemnity agreements in the commercial context. However, vertical stare decisis compels us to follow strictly the decisions rendered by the Utah Supreme Court. *State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994).

We see no meaningful distinction between the indemnity language in the instant case and that in *Freund*. The indemnity provision in the ABP/Clark Agreement, like the indemnity provision at issue in *Freund*, employs the all-inclusive terms "any and all" to modify the term "liability."[2] *Id.* It therefore clearly expresses the parties' intention that ABP be indemnified for liability arising out of its own negligence, and we so hold. Further, we think the language "resulting directly or indirectly from [Clark's] performance of this contract," merely designates the subject matter of the indemnification coverage, similar to language in the indemnity provision at issue in *Freund*, which extended coverage to any and all liability "which may arise out of or be connected with the erection, maintenance, presence, use or removal of Licensee's equipment." *Id.*

Our conclusion is in accord with well-reasoned cases from other jurisdictions. The court in *Public Service Co. v. United Cable*, 829 P.2d 1280 (Colo.1992), held all-inclusive indemnification "in any way arising out of, connected with or resulting from the exercise by Licensee of the rights granted to it here-

under," to be a sufficiently "clear and unequivocal" expression of the parties' intent to indemnify the indemnitee for its own negligence. *Id.* at 1282–83 (emphasis omitted). Similarly, in *Fischbach–Natkin Co. v. Power Process Piping, Inc.*, 157 Mich.App. 448, 403 N.W.2d 569 (1987), the court held that all-inclusive indemnification against liability "arising out of or resulting from or in any way connected with the work covered by this Subcontract" to be a sufficient expression of the parties' intent to indemnify the indemnitee for its own negligence. *Id.* 403 N.W. at 570, 572.

As further support for our construction, Utah's Liability Reform Act, enacted four years before ABP and Clark entered into the ABP/Clark Agreement, renders useless indemnification for any tort liability other than one's own. *See* Liability Reform Act, ch. 199, §§ 1–7, 1986 Utah Laws 470, 470–71 (codified at Utah Code Ann. §§ 78–27–37 to –43 (1992)).[3] Thus, because ABP only required indemnification for its own negligence, in order for the indemnity provision to have any meaning, it must have been intended to indemnify ABP for its own negligence.[4]

**2.** The full text of the indemnification provision set forth in *Freund* reads:

"Licensee shall indemnify, protect, and save harmless Licensor from and against *any and all claims, demands, causes of action, costs or other liabilities* for damages to property and injury or death to persons which may arise out of or be connected with the erection, maintenance, presence, use or removal of Licensee's equipment, or of structures, guys and anchors, used, installed or placed for the principal purpose of supporting Licensee's equipment or by any act of Licensee on or in the vicinity of Licensor's poles, including, but not by way of limitation, payments made under workmen's compensation laws. *Except for intentional wrongdoing or willful negligence on the part of Licensor*, or any of its agents or employees, Licensee shall also indemnify[,] protect[,] and save harmless Licensor from and against any and all claims, demands, causes of action, costs, or other liabilities arising from any interruption, discontinuance or interference with Licensee's service which may be occasioned or which may be claimed to have been occasioned by any action of Licensor pursuant to or consistent with this agreement.... This indemnification agreement by Licensee in favor of Licensor, shall provide Licensor with *full and complete indemnification*, including defense of any suits, actions or other legal proceedings resulting from *any* claims for dam-

ages to property and injury or death to persons and shall apply to *all* claims, demands, suits, and judgments *of whatever nature* which shall be made or assessed against Licensor in furnishing such poles under the terms of this agreement or for any other thing done or omitted in conjunction with Licensor's dealings with Licensee."

793 P.2d at 371 (emphasis supplied by the court).

**3.** Under the comparative negligence section of the Act, "no defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributable to that defendant." Utah Code Ann. § 78–27–38 (1992) (current version at Utah Code Ann. § 78–27–38 (Supp.1994)).

**4.** Courts in other jurisdictions have also recognized the impact of liability reform on the construction of indemnity provisions. *See, e.g., Bosse v. Litton Unit Handling Sys.*, 646 F.2d 689, 693–94 (1st Cir.1981) (noting, in support of holding that indemnity agreement covered concurrent negligence of indemnitee, that "if [indemnitee] were to be barred by its own negligence it would make the agreement pointless"); *Kirkpatrick & Assocs., Inc. v. Wickes Corp.*, 53 N.C.App. 306, 280 S.E.2d 632, 635 (1981) (noting, in support of holding that indemnitee not barred from recovering under indemnity clause for its own

In sum, if ABP's liability in the present case arose out of Clark's performance of the ABP/Clark Agreement, the indemnity language provides ABP coverage for its own negligence. Section B.1.(d) of the ABP/Clark Agreement provides:

> Safety Measures: Sub–Contractor shall take all reasonable precautions to protect the work, workmen, and the public, and shall provide, where reasonably necessary, barriers, guards, temporary bridges, lights, and watchmen.

It is undisputed that ABP's liability arose out of Clark's performance of this contractual obligation. We therefore hold that the ABP/Clark indemnity provision would, if not running afoul of public policy, entitle ABP to indemnification from Clark for ABP's liability in connection with Mr. Healey's injuries.

### B. Section 13–8–1

■ Next, Clark argues that the indemnity provision of the ABP/Clark Agreement, if construed to indemnify ABP for its own negligence, violates Utah Code Ann. § 13–8–1 (1992) and is therefore void.

Section 13–8–1 provides in relevant part:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair or maintenance of a building ... purporting to indemnify the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee, is against public policy and is void and unenforceable.

*Id.* Thus, "an indemnity agreement in the construction industry violates public policy if it requires indemnification of the indemnitee for its sole negligence." *Jacobsen Constr. v. Blaine Constr. Co.*, 863 P.2d 1329, 1331 (Utah App.1993).

In *Jacobsen,* this court held that the following indemnity provision violated section 13–8–1:

"Subcontractor shall indemnify contractor and/or owner against, and save each harmless from:

> . . . .

> (2) any and all loss, damage, injury, liability and claims thereof for injuries to or death to persons and loss of or damages to property resulting directly or indirectly from subcontractor's performance of this agreement, regardless of the negligence of the owner, the contractor, or their agents or employees; *provided that where such loss, damage, injury, liability or claims are the result of active negligence on the part of owner or contractor or their respective agents or employees, and is not caused or contributed to by an omission to perform some duty also imposed on subcontractor, its agents or employees, such indemnity shall not apply to such party guilty of such active negligence unless the prime contract otherwise provides.*"

*Id.* at 1330 n. 1 (emphasis added). The court reasoned that, because the provision excepted from coverage only the sole active negligence of the indemnitees, the indemnitor would be required to indemnify for the sole passive negligence of the indemnitees. *Id.* at 1331. Therefore, the court concluded, the provision was void and unenforceable in accordance with the dictates of section 13–8–1. *Id.*

ABP attempts to distinguish the indemnity provision in the ABP/Clark Agreement. First, ABP points out, the ABP provision does not except the sole active negligence of the indemnitee. We find this argument unpersuasive. In our view, the absence of any exception at all leaves the ABP/Clark indemnity provision even further from complying with section 13–8–1 than the indemnity provision in *Jacobsen,* which included one exception, albeit an incomplete one.

Second, ABP argues, the ABP provision limits indemnification to claims resulting from Clark's performance of the contract, and "it is impossible to conceive of a factual

---

negligence, that "[t]here are few situations conceivable where a party would be seeking indemnification had it not been guilty of some fault, for otherwise no judgment could be recovered against it," and thus a different construction "would render the provision virtually meaningless").

setting in which ABP could be solely negligent for acts falling within Clark's obligations under the contract." We are not persuaded by this argument. Liability may well arise out of Clark's non-negligent performance of the contract, leaving ABP solely negligent. Moreover, as the court held in *Wollam v. Kennecott Corp.*, 663 F.Supp. 268, 272 (D.Utah 1987), if language of indemnity is to be construed to cover the negligence of the indemnitee, the obligation, though not stated expressly, must nevertheless "limit that obligation to situations where [the indemnitee] is not the sole responsible party." *Id.* Here, the language of indemnity, which we construe as covering ABP's own negligence, does not limit Clark's obligation to situations in which ABP is not the sole responsible party.

In sum, we hold that the indemnity provision of the ABP/Clark Agreement violates section 13–8–1 and is therefore void and unenforceable. In so doing, we note that it would have been a simple matter for the parties to limit Clark's obligation so that the indemnity provision did not run contrary to section 13–8–1; a clause excepting those situations in which ABP's sole negligence resulted in ABP's liability would have been sufficient.

## II. ABP'S CROSS–CLAIM AGAINST JB

ABP also cross-claims against JB, arguing that JB must indemnify ABP because ABP is a third-party beneficiary of the Clark/JB Agreement. The claim is grounded in the following indemnity provision in that subcontract:

> The Subcontractor assumes toward the Contractor all the obligations and responsibilities that the Contractor assumes toward the Owner. The Subcontractor shall indemnify the Contractor and the Owner against, and save them harmless from, any and all loss, damage, expenses, costs, and attorneys' fees incurred or suffered on account of any breach of the provisions or covenants of this contract.

Clearly, we need not decide whether ABP is a third-party beneficiary of this provision, or whether "Owner" refers to ABP, a premise of ABP's third-party beneficiary argu-

ment: even if we were to hold that JB assumed all the obligations that Clark assumed toward ABP, and that ABP is a third-party beneficiary of that assumption, JB would not be obligated to indemnify ABP because Clark is not obligated to indemnify ABP. We therefore affirm the trial court's dismissal of this claim.

## III. CLARK'S CROSS–CLAIM AGAINST JB

Finally, Clark argues in connection with its cross-claim against JB, that if we decide Clark must indemnify ABP for ABP's own negligence, then JB, by assuming toward Clark all the obligations and responsibilities that Clark assumed toward ABP, must indemnify Clark. Because we hold that the indemnification provision of the ABP/Clark Agreement is void and unenforceable, and that Clark therefore is not obligated to indemnify ABP, we likewise affirm the trial court's dismissal of this claim.

## CONCLUSION

We hold that the language of indemnity in the ABP/Clark Agreement is sufficient to express clearly and unequivocally the parties' intent that Clark indemnify ABP for ABP's own negligence. However, we hold that because the indemnity provision does not limit Clark's obligation to situations in which ABP is not solely negligent, the provision runs afoul of section 13–8–1 and is therefore void and unenforceable. Consequently, we affirm the trial court's dismissal of ABP's cross-claim against JB, as well as Clark's cross-claim against JB.

WILKINS, J., concurs.

BENCH, Judge (concurring in the result):

The main opinion's expansive analysis of *Freund v. Utah Power & Light Co.*, 793 P.2d 362 (Utah 1990), is unnecessary to the disposition of this case. I write separately to distance myself from the dicta in the main opinion that attempts to expand *Freund*'s narrow exception to the point of swallowing *Freund*'s rule of strict construction.

I would follow this court's analysis in *Jacobsen Construction Co. v. Blaine Construction Co.*, 863 P.2d 1329, 1331 (Utah App. 1993), and go directly to the controlling statute. If, as alleged by ABP, the agreement indemnifies ABP for its sole negligence, then the agreement is void under Utah Code Ann. § 13–8–1 (1992). I therefore concur in the result ultimately reached by the main opinion.